## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ASTEWAY ELALA,<br><br>  Plaintiff,<br><br>v.<br><br>SPIRE CREDIT UNION and EXPERIAN INFORMATION SOLUTIONS, INC.<br>  Defendants. | **Case No.:** 0:21-cv-01286<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1.  **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Asteway Elala, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian") and Spire Credit Union, ("Spire").

## I.      INTRODUCTION

1.      Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Experian, a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.     Plaintiff's Complaint also alleges violations of the FCRA, against Defendant Spire for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Experian.

## II.     JURISDICTION AND VENUE

3.     The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.     Defendants transact business here; as such, personal jurisdiction is established.

## III.     PARTIES

6.     Asteway Elala is a natural person residing in the city of Minnetonka, Hennepin County, Minnesota.

7.     Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.     Defendant Spire is a financial institution engaged in the business of giving credit and collecting debt. Spire is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, Spire is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Spire is headquartered at 2025 Larpenteur Ave W, Falcon Heights, Minnesota 55113.

9.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for

the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     Upon information and belief, Experian, disbursed consumer reports to third parties under contract for monetary compensation.

11.     At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV.     FACTUAL BACKGROUND

13.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

3

privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.     Experian reports consumer information about Plaintiff and other consumers through the sale of consumer reports.

18.     Experian's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Experian obtains consumer information from various sources, including furnishers that provide consumer information to the CRA, and information the CRA independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

20.     The diligence Experian exercises in recording consumer bankruptcy filings is not replicated in its reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

21.     Consequently, Experian routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681e(b), despite possessing information that indicates their reporting is inaccurate.

22.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Experian) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Experian's reports.

23.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

24.     The information reported by Experian contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Experian's consumer reports.

25.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

26.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

27.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

28.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

29.     The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

30.     However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

31.     Experian voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer report.

32.     Experian is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

33.     Experian is also aware of the effect of a reaffirmation agreement, which allows a consumer to remain liable for the debt and excludes the debt from the bankruptcy discharge.

34.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Experian obtains the bankruptcy case information.

6

35.     Additionally, Experian receives actual notice of reaffirmation agreements from furnishers of account/tradeline information.

36.     Experian also receives constructive notice of reaffirmation agreements from furnishers of tradeline information that provide data indicating that a consumer is continuing to make regular payments on a pre-bankruptcy debt after receiving their discharge order.

37.     In this case, Plaintiff also specifically notified Experian that the debt was reaffirmed, but the CRA rejected this specific notice, despite also possessing or having access to information that confirmed the debt was in fact reaffirmed.

38.     Although Experian was notified of its inaccurate reporting and had the information necessary to correctly report Plaintiff's Account, Experian failed to verify the information.

39.     Instead, Experian followed unreasonable procedures that allowed them to blindly rely on the furnisher's deficient investigation and report its results, despite possessing conflicting information about the Account.

40.     Rather than following reasonable procedures to assure maximum possible accuracy, Experian inaccurately report information regarding pre-bankruptcy debts even if that information ignores or contradicts information known and reported by the CRAs themselves.

41.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Experian for its inaccurate reporting

following a consumer bankruptcy, including for Experian's failure to accurately report reaffirmed debts.

42.     Therefore, Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

<u>*Allegations Specific to the Credit Reporting of Plaintiff*</u>

43.     In or around May 2016, Plaintiff obtained a loan from Spire account no. 911555 ("the Account").

44.     On or about June 30, 2020, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Minnesota, petition number 20-41723.

45.     On or about August 19, 2020, Plaintiff reaffirmed Plaintiff's obligations under the Account, whereby Plaintiff remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiff's bankruptcy discharge.

46.     Plaintiff received a discharge in bankruptcy court on or about October 13, 2020.

47.     Plaintiff filed for bankruptcy and reaffirmed the Account to rebuild and improve Plaintiff's credit.

48.     After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

49.     Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained her Experian, Equifax, and Trans Union consumer reports to ensure her credit account tradelines and bankruptcy were being accurately reported.

50.     Plaintiff learned Experian was inaccurately reporting her reaffirmed Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or non-current/non-paid even though Plaintiff continued to make ongoing payments on the Account.

51.     Before filing for bankruptcy, Plaintiff made payments on the Account, and Plaintiff has been making timely payments on the Account.

52.     Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation. The Account (debt) was indisputably not discharged. Plaintiff did this to maintain some credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

53.     However, when Plaintiff pulled Plaintiff's consumer reports, Plaintiff discovered that Experian was not reporting the Account's accurate payment history despite reaffirmation of the debt.

54.     Experian's reporting was patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy.

55.     Experian's reporting was patently false and materially misleading, as Plaintiff continued to make timely monthly payments on the Account, which Plaintiff believes was also reported to Experian.

56.     Experian failed to report the Account's accurate payment history and ongoing payments.

57.     Experian reported inaccurate payment statuses that indicate the Account was included in and/or discharged in bankruptcy, instead of reaffirmed with an accurate status and payment history.

58.     Notably, the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Account like Experian.

<p align="center">*Plaintiff's Disputes*</p>

59.     On or about February 24, 2021, Plaintiff sent a letter to Experian, disputing its inaccurate reporting of the Account.

60.     The letter specifically advised that Plaintiff did not include the Account in Plaintiff's bankruptcy, remained personally liable/obligated for the Account, and that Plaintiff continued to make regular payments on the Account.

61.     Upon information and belief, Experian, received Plaintiff's dispute letters.

62.     Upon information and belief, Experian, forwarded Plaintiff's disputes to Spire within 5 business days of receipt.

63.     Experian did not respond to Plaintiff's dispute letter and continued to report the Account as included in Plaintiff's bankruptcy.

64.     Upon information and belief, Experian did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to Spire, despite independently possessing information indicating the

Account was reaffirmed, and/or the ability to independently verify the Account reaffirmation through the same sources it receives consumer bankruptcy information.

65.     Rather than perform a reasonable investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian through Plaintiff's reported payment history on the Account, Experian merely parroted information furnished by Spire despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

66.     Upon information and belief, Spire failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian.

67.     Spire failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Spire continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which Spire should have reported accurate information about the Account.

*Plaintiff's Damages*

68.     Upon information and belief, had Experian accurately reported the Account with its correct payment history and positive continuing payments, Plaintiff's credit score would have been better.

69.     As a direct result of Experian's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

11

70.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

71.     Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

72.     Upon information and belief, Plaintiff applied for a credit card with Capital One and was approved at less favorable terms due to Experian's inaccurate reporting of the Account.

### V.     COUNT I
**CRA Defendant Experian**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)**

73.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.     The FCRA requires consumer reporting agencies, like Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

75.     Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

76.      Additionally, Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the

information Experian is reporting is inaccurate, and/or otherwise contradicted by information known by Experian or reasonably available to Experian.

77. Upon information and belief, Experian regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties.

78. Upon information and belief, Experian voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

79. Experian inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from Plaintiff's discharge.

80. Experian possessed information that indicated Plaintiff reaffirmed the Account.

81. If not, information concerning reaffirmation agreements is reasonably available from the same sources of consumer bankruptcy information Experian procures.

82. Experian knew or should have known of its obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Experian from which it is on notice of its unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

83.     Even after Plaintiff notified Experian of the inaccurate information it included in Plaintiff's credit file, Experian continued to inaccurately report the reaffirmed Account as "included in bankruptcy," despite notice that the Account was reaffirmed, and the ability to independently confirm the information detailed in Plaintiff's dispute.

84.     Experian failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher's investigation of the dispute and blindly reporting its results despite independently possessing information that conflicted with the information reported by the furnisher, and which otherwise substantiated Plaintiff's dispute.

85.     Experian also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that Plaintiff reaffirmed the Account following Plaintiff's dispute, which information is reasonably available from the same sources the CRA procures consumer bankruptcy information.

86.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

87.     When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

88.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

89.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Experian violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified it of its inaccurate reporting of the Account.

90.     Defendant Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

   i.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

   ii.   Failing to consider all relevant information while investigating Plaintiff's dispute.

   iii.  Failing to include all relevant information when notifying Spire of Plaintiff's dispute.

91.     Instead of reasonably reinvestigating Plaintiff's dispute, Experian did not respond to Plaintiff's dispute and continued to report the reaffirmed Account as included in Plaintiff's bankruptcy.

92.     Experian's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

93.   Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

94.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Experian's inaccurately reporting, and otherwise failing to report that the debt was reaffirmed.

95.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

96.   Experian is a direct and proximate cause of Plaintiff's damages.

97.   Experian is a substantial factor in Plaintiff's damages.

98.   Therefore, Experian is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   COUNT II
### Defendant Spire
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

99.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

100.   The FCRA requires that upon receipt of a consumer's dispute from a CRA, furnishers of information like Spire, conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

16

101.   Spire knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and detailed in case law.

102.   Additionally, Spire possesses or could easily obtain substantial written materials that detail its duties as a furnisher under the FCRA. Despite knowing these legal obligations, Spire acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

103.   Plaintiff disputed her Spire tradeline through national CRA Experian.

104.   Thereafter, the consumer reporting agency forwarded Plaintiff's dispute to notify Spire that Plaintiff was disputing the information it had furnished about the Account.

105.   Spire received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge necessary to report the Account accurately.

106.   Spire continues to furnish inaccurate information about Plaintiff to Experian, even though Spire possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

107.   The inaccurate Spire Account materially and adversely affects Plaintiff's credit standing.

108.   On at least one occasion within the past two years, by example only and without limitations, Defendant Spire violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian.

109.    Spire violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)    Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)    Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)   Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

110.   Spire unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

111.   Spire is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

112.   Consequently, Spire is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.


## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants for the following:

A.   Declaratory judgment that Defendants violated the FCRA;

B.   Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.   Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be

allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## VIII.  <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial

by jury of all issues triable by jury.


Respectfully submitted this 25th day of May 2021.

<div style="margin-left: 40%;">

By: <u>*/s/ Jenna Dakroub*</u>
Jenna Dakroub,
MN #0401650
*Attorneys for Plaintiff, Asteway Elala*
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5513
F: (818) 600-5413
E: jenna@pricelawgroup.com

</div>